Case No. 09-cv-1894

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROY E. ERWIN; RUTH ILENE ERWIN ROBERTS; TED BOOHER; ELIZABETH ANN
MCKINNEY, as attorney-in-fact for MARY M. LUNSFORD; TODD REYNOLDS; CLIFTON
MUZYKA; CAROL FITZPATRICK; and PHILLIP KRUMNOW, JR., as representative of the
ESTATE OF PHILLIP KRUMNOW, SR., KRUMNOW FAMILY TRUST, and PHIL
KRUMNOW, INC. EMPLOYEE PENSION TRUST,

        Plaintiffs,

vs.

BRYAN F. RUSS, JR.; JAMES H. MCCULLOUGH; NESTOR LEAMON; PALMOS, RUSS,
MCCULLOUGH & RUSS, L.L.P.; L K & P, L.L.C; OAKS & DIAMONDS, L.L.C.; VELNON,
L.L.C.; DEMINIMUS MANAGEMENT, L.L.C.; FLARE ROYALTIES, L.L.C.; FLARE
ROYALTIES, L.P.; TRAVIS T. MORGAN; ALMA IONE MORGAN; MICHAEL T.
MORGAN; LEOR ENERGY, L.P.; ENCANA OIL & GAS (USA), INC.; ZEIG
ENTERPRISES, INC.; JAMES ZEIG; HEARNE BUSINESS PARK, L.L.C.; MOLLY
HEDRICK; STEPHEN BOYKIN; DONA E. HARRIS; PAM KRUMNOW; BETTIE
MENDENHALL; NORA CORA WITHEM; DELAWARE DEVELOPMENT COMPANY,
L.L.C.; LARRY A. AIKENS; W. SCOTT CARLSON; METROPOLITAN WATER
COMPANY, L.P.; BLUE WATER SYSTEMS, L.P.; ELEANOR FUNK,  individually and as
trustee for J.B. NEWTON TRUST and J.B. NEWTON ESTATE; GERALD YEZAK; JOE
DAVIS; KAREN BOX; KENNETH SWICK; FIRST STAR BANK OF BREMOND;
MICHAEL MUZYKA; and CATHERINE MOTLEY,

        Defendants

**ORIGINAL COMPLAINT**

       Now come Roy E. Erwin, Ruth Ilene Erwin Roberts, Ted Booher, Elizabeth Ann

McKinney, Todd Reynolds, Clifton Muzyka, and Carol Fitzpatrick and Phillip Krumnow, Jr.,

Plaintiffs herein, and allege and state the following on information and belief:

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 insofar as the Plaintiffs brings claims against the Defendants under 18 U.S.C. §1964 and 42 U.S.C. §1983.

2.      Venue is proper under 29 U.S.C. §1391(b) insofar as Defendant W. Scott Carlson resides in the Houston Division of the U.S. District Court of the Southern District of Texas, and the principal place of business for Defendant Leor Energy, L.P. is in the Houston Division.

## Parties

3.      Plaintiff Roy E. Erwin is resident of Reagan, Texas.  He is the rightful owner of a portion of the Mineral Interest described below.

4.      Plaintiff Ruth Ilene Erwin Roberts is a resident of Robertson County, Texas.  She is a rightful owner of a portion of the Mineral Interest described below.

5.      Plaintiff Ted Booher is a resident of Harris County, Texas.

6.      Plaintiff Elizabeth Ann McKinney is a resident of Kennard, Texas.  She is the attorney-in-fact for Mary M. Lunsford, who is the rightful owner of the Mineral Interest described below.

7.      Plaintiff Todd Reynolds is a resident of Milano, Texas.

8.      Plaintiff Clifton Muzyka is a resident of Bremond, Texas.

9.      Plaintiff Carol Fitzpatrick is a resident of Bremond, Texas.  She is the wife of Plaintiff Muzyka.

10.      Phillip Krumnow, Jr. is the legal representative of the Estate of Phillip Krumnow, Sr., the Krumnow Family Trust, and the Phil Krumnow, Inc. Employees Pension Trust.

11.      Defendant Brian F. Russ, Jr. is an attorney practicing in Hearne, Texas and residing in Robertson County, Texas.

12.      Defendant James H. McCullough is an attorney practicing in Hearne, Texas and

residing in Robertson County, Texas.

13.    Defendant Nestor Leamon is a real estate agent in Franklin, Texas.

14.    Defendant Palmos, Russ, McCullough, & Russ, L.L.P. (hereinafter "The Firm") is a law firm in Hearne, Texas and a limited liability partnership organized under the laws of Texas.

15.    Defendant L K & P, L.L.C. (hereinafter "L K & P") is a limited liability company organized under the laws of Texas.  It is owned by Defendants Russ and McCullough.

16.    Defendant Oaks & Diamonds, L.L.C. (hereinafter "Oaks & Diamonds") is a limited liability company organized under the laws of Texas.  It is owned by Defendants Russ and McCullough.

17.    Defendant Velnon, L.L.C. (hereinafter "Velnon") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

18.    Defendant Deminimus Management, L.L.C. (hereinafter "Deminimus") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

19.    Defendant Flare Royalties, L.L.C. is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

20.    Defendant Flare Royalties, L.P. is a limited partnership whose general partner is Flare Royalties, L.L.C.

21.    Defendant Travis T. Morgan is a resident of Robertson County, Texas.

22.    Defendant Alma Ione Morgan is a resident of Robertson County, Texas. She is the wife of Defendant Travis T. Morgan.

23.    Defendant Michael T. Morgan is a resident of Robertson County, Texas. He is the son of Defendants Travis T. Morgan and Alma Ione Morgan.

24.     Defendant Leor Energy, L.P. (hereinafter "Leor Energy") is a limited partnership headquartered in Houston, Texas.

25.     Defendant Encana Oil & Gas (USA), Inc. (hereinafter "Encana") is a corporation headquartered in Denver, Colorado.

26.     Defendant Zeig Enterprises, Inc. (hereinafter "Zeig Enterprises") is a corporation organized under the laws of Texas and headquartered in Hearne, Texas.

27.     Defendant James Zeig is a resident of Robertson County, Texas. He is the president of Defendant Zeig Enterprises, Inc.

28.     Defendant Hearne Business Park, L.L.C. (hereinafter "Hearne Business Park") is a limited liability company organized under the laws of Texas.

29.     Defendant Molly Hedrick is an attorney practicing in Hearne, Texas and a member of The Firm.

30.     Defendant Stephen Boykin is an attorney practicing in Franklin, Texas.

31.     Defendant Dona E. Harris is an attorney practicing in Franklin, Texas.

32.     Defendant Pam Krumnow served as a trustee of the Krumnow Family Trust.

33.     Defendant Bettie Mendenhall served as a trustee of the Krumnow Family Trust.

34.     Defendant Nora Cora Withem served as a trustee of the Krumnow Family Trust.

35.     Defendant Delaware Development Company, L.L.C. ("DDC") is a Texas limited liability company.

36.     Defendant Larry A. Aikens is an officer of DDC.

37.     Defendant Metropolitan Water Company, L.P. ("MWC") is a Texas limited partnership.

38.     Defendant W. Scott Carlson is partner in MWC.

39.     Defendant Blue Water Systems, L.P. ("Blue Water") is a Texas limited partnership.  It is the successor to MWC.

40.     Eleanor Funk is a resident of Yardley, Pennsylvania and she is trustee for the J.B. Newton Trust and J.B. Newton Estate.  She is sued individually and as trustee.

41.     Defendant Gerald Yezak is the Robertson County Sheriff.

42.     Defendant Joe Davis is a commander in the Robertson County Sheriff's Department.

43.     Defendant Karen Box is a deputy in the Robertson County Sheriff's Department.

44.     Defendant Kenneth Swick is the president of Defendant First Star Bank of Bremond.

45.     Defendant First Star Bank of Bremond ("First Star Bank") is a bank organized under the laws of the State of Texas.

## Introduction

46.     Defendants Russ and McCullough, acting in conjunction with their primary co-conspirator, District Judge Robert M. Stem, have been extorting money and stealing land and mineral interests throughout Robertson County for more than 15 years.  Russ and McCullough target three primary groups: poor people, African-Americans, and outsiders, *i.e.*, people who reside outside of Robertson County.

47.     When stealing land or mineral interests, Russ and McCullough often use shell companies to create sham transactions.  Shell Company A, for example, will purport to transfer its land or mineral interests to Shell Company B, even though Shell Company A never owned the land or mineral interest in the first place.  Russ and McCullough, acting through The Firm, then seek a declaratory judgment that Shell Company B owns the land or mineral interest.  Judge

Stem grants Russ and McCullough permission to serve notice on the allegedly undetermined owners by publication in local newspapers.[1]  After the actual owners fail to respond, Judge Stem, at the behest of Russ and McCullough, appoints Dona Harris as attorney ad litem, ostensibly to represent the interests of the actual landowners.  On the same day he is appointed, Mr. Harris declares that he cannot locate the actual owners (even though most of them are readily identifiable), and Judge Stem appoints Nestor Leamon as receiver to sell the property.  Leamon then sells the property to Russ and McCullough at prices far below market value, and the proceeds are put into the registry of the court.  If the actual owners fail to claim the money within seven years, Judge Stem gives it back to Shell Company B, *i.e.*, back to Russ and McCullough.

48.    Another scheme commonly employed by Russ and McCullough involves court-sanctioned extortion.  Two pipeline companies in particular have been attempting to lay pipeline to connect their gas wells in Robertson County.  Whenever they seek to acquire pipeline right-of-way from landowners, The Firm recruits the landowners as clients and demands prices far above the market rate.  If they decline to pay the extortionate prices and instead seeks to obtain right-of-way by condemnation, Judge Stem consistently appoints the same three special commissioners to determine the right-of-way price, and these commissioners consistently fix prices at 5-10 times the market rate.  If the companies wish to build the pipeline, they must pay the extortionate price or deposit the amount into the court's registry pending appeal.

49.    Judge Stem often meets with Russ and/or McCullough *ex parte* before hearings, and it is widely known in and around Robertson County that Judge Stem will rule in favor of the clients of The Firm with no regard for the law or the facts.  In fact, outside plaintiff's attorneys

---

[1] In at least one instance (described below), where some of the actual owners resided in Robertson County, Judge Stem allowed Russ and McCullough to avoid detection by posting notice in the courthouse and two city halls rather than following the procedural norm of notice by publication.

sometimes partner with The Firm, even where a case has little or no connection to Robertson County, because they know that Judge Stem will rule that venue is proper when The Firm requests it, and because they know Judge Stem will rule in The Firm's favor thereafter.  For example, *Denise Nichols, et al. v. T.J. Lambrecht Construction, Inc.*, Cause No. 06-11-17666-CV, arose from an automobile accident that killed four people at a Brazos County highway construction site.  None of the legitimate parties had any connection to Robertson County.  The plaintiffs' attorneys, however, named as defendant a subcontractor from Robertson County that had no relationship to the crash.  Judge Stem forced the defendants to go to trial in Robertson County, and the jury awarded more than $3 million to the plaintiffs.  The Firm was not satisfied with that amount, however, so it asked Judge Stem to disregard the jury's award and order a new trial on the grounds that the award was too low.  Judge Stem ordered a new trial, and the defendants finally settled for an undisclosed amount.  In other words, The Firm appears to have used its connections with Judge Stem to extort a higher settlement from the defendants.

50. The Plaintiffs are aware of occasions when attorneys from outside Robertson County appear to have been run off or bought off.  In some instances, when outside attorneys ran up against the corrupt collusion between The Firm and Judge Stem, they gave up and withdrew. On other occasions, outside attorneys appear to have acted contrary to their clients' interests.

51. In this Complaint, the Plaintiffs will detail three major incidents of fraud and racketeering involving Judge Stem, Defendants Russ and McCullough, and one or more additional Defendants.  The Plaintiffs are aware of other instances in which land or mineral interests were stolen by Russ, McCullough, and Neamon, and they expect to amend their complaint to add additional plaintiffs and defendants.

**Facts**

Theft from the United States Government

52.      The First National Bank of Hearne was closed on December 10, 1920, and

thereafter a receiver was appointed by the Comptroller of the Currency. On February 14, 1924,

R.M. Johnson, the receiver, sold to James A. Thompson a 61.85-acre tract of land that had

belonged to the bank. Mr. Johnson reserved ownership of the tract's mineral estate, and

thereafter he never sold nor conveyed it.  As a result, the mineral estate was held in trust by the

United States Government.

53.      On October 21, 1999, Defendant L K & P, a shell company, purported to transfer

ownership of the aforementioned 61.85-acre mineral estate to Oaks & Diamonds, another shell

company.  Both companies are owned by Defendants Russ and McCullough, and those

Defendants knew that L K & P had no legal title to the mineral estate.

54.      On October 25, 1999, Defendant McCullough and The Firm filed suit in the 82nd

Judicial District of Robertson County on behalf of Oaks & Diamonds, seeking a declaratory

judgment in Cause No. 99-10-15849-CV that Oaks & Diamonds owned the mineral estate.  Oaks

& Diamonds purported to sue the heirs of R.M. Johnson along with the heirs of bank officials

and a subsequent receiver, but neither Johnson nor any other defendants were proper parties

insofar as the receivers were merely officers of the United States Government and never owned

the 61.85-acre tract nor its mineral estate.  The United States was never notified of the suit, nor

was it represented.  Oaks & Diamonds, Defendant McCullough, and the Firm claimed neither the

named defendants nor their heirs could be found, and Judge Robert M. Stem granted permission

to serve notice by publication.

55.      In a November 4, 1999 letter to Marsha Rekieta, court coordinator for Judge

Stem, Defendant McCullough wrote that Mr. Harris had "agreed to serve as an ad litem in

[Cause No. 99-10-15849-CV] and be appointed on December 13, 1999, the default date in the citation by posting." On December 13, 1999, Judge Stem appointed Mr. Harris attorney ad litem for the unrepresented parties. In other words, Judge Stem allowed Mr. McCullough to select the attorney for the opposing parties.

56.     On the same day he was appointed, Mr. Harris entered an answer for the unrepresented heirs, and Judge Stem signed an order in favor of Oaks & Diamonds without any further inquiry or proceedings. Judge Stem also appointed Defendant Leamon that same day as receiver for the sale of the mineral estate. Mr. Harris's answer and Judge Stem's order were printed in the exact same font and format as Defendant McCullough's original petition, thus it appears that Judge Stem and Mr. Harris were simply following the script prepared for them by Defendant McCullough and The Firm. Moreover, no attorney ad litem can purport to have made reasonable efforts to contact his unknown clients in less than one day. Mr. Harris knew this, and Judge Stem knew this. Accordingly, one can only conclude that Mr. Harris and Judge Stem colluded with the other Defendants to convert assets that were in the legal possession of the United States.

57.     On January 20, 2000, Mr. Leamon filed his report of sale in a font and format identical to that used previously by Defendant McCullough in his petition, and the report was notarized by Mr. McCullough's secretary. Thus it appears that Mr. Leamon, too, was following the script prepared for him by Defendant McCullough and The Firm. According to his report, Mr. Leamon sold the alleged defendants' interest in the mineral estate to Oaks & Diamonds for $6,185.00, a sum far below its actual value. On January 24, 2000, Judge Stem signed a decree confirming the sale to Oaks & Diamonds, and he ordered the money paid into the registry of the court and held for seven years, after which time it would be returned to Oaks & Diamonds.

Judge Stem also awarded the Firm $2,500.00 and Defendant Harris $500 in legal fees.  In other words, Judge Stem paid The Firm for its role in orchestrating the fraud.  The $6,185.00 sales price was returned to Oaks & Diamonds in 2007.

58.     On January 20, 2005, Oaks & Diamonds sold one-half of its purported interest in the 61.85-acre mineral estate to Gary and Loretta Waldrop.

The Erwin Heirs

59.     In 1998, Plaintiff Ruthie Roberts and her sister met with Defendant Russ at his office to discuss their family's one-half mineral interests in a roughly 157-acre tract in Robertson County (the "Mineral Interest").  Defendant Russ told the ladies that there were so many heirs to the property (hereinafter "Erwin heirs") that it would not be worthwhile to try to determine their interests.

60.     During 2003 and 2004, gas exploration in Robertson County increased dramatically, and the value of mineral interests likewise increased dramatically.

61.     Defendants Travis T. Morgan, Alma Ione Morgan, and Michael T. Morgan (collectively "Morgan Defendants") own the surface estate of the 157-acre Mineral Interest.  On November 8, 2005, the Morgan Defendants and Defendant Russ, acting on behalf of Defendant Flare Royalties, L.P., executed a "Confirmation of Royalties" with Defendant Leor Energy, L.P. The document identified the Morgan Defendants and Flare Royalties as the owners of royalties attributable to slightly more than 552 acres.  The 157-acre Mineral Interest belonging to the Erwin heirs was included in that tract.  This document was not filed with the Robertson County Clerk, however, until August 23, 2006.  The delay in filing is explained by the fact that at the time the document was executed, Defendant Flare Royalties did not own any interest whatsoever in the 157-acre tract, a fact that was known to the Morgan Defendants, Defendant Russ,

Defendant Flare Royalties, and Defendant Leor Energy. These Defendants had conspired to steal the Mineral Interest belonging to the Erwin heirs, therefore they hid the transaction.

62.    In order to create some pretense of a claim to the Mineral Estate, Defendant Russ instigated a series of sham transactions. On November 22, 2005, Defendant Deminimus, a shell company owned by Russ and McCullough, filed a deed purporting to transfer 90 percent of the Mineral Interest to Defendant Velnon, another shell company owned by Russ and McCullough. Defendant Russ knew that Defendants Deminimus and Velnon did not own any interest in the Erwin property, but he created the sham transactions so he could ultimately purport to transfer the Erwin heirs' property to Defendant Flare Royalties.

63.    On the same day, Defendant Russ filed an Original Petition for Appointment of a Receiver and for Declaratory Judgment in *Velnon, L.L.C. vs. Unknown Heirs of Elizabeth Warren*, Case No. 05-11-17388-CV, 82nd District Court of Robertson County. He also filed a Motion for Substituted Service Other Than Publication (By Posting), seeking to post notice of the lawsuit rather than publish it in the local newspaper, where some of the Erwin heirs might see it. Judge Stem granted the motion, and the notice was posted at the Hearne and Calvert city halls, and at the Robertson County Courthouse.

64.    On January 9, 2006, Judge Stem appointed Mr. Harris as attorney ad litem. As usual, Mr. Harris filed a general denial but with no defenses under Rule 93 (or on any other grounds), not motions for continuance, and no other pleadings or motions on behalf of the Erwin heirs.

65.    The same day, Judge Stem signed an Order Appointing Receiver, Ordering Sale of Property, and an Order Placing Funds in the Registry of the Court. Defendant Neamon was appointed receiver and also filed a notice of private sale on the same day.

66.    On January 20, 2006, the Receiver's Report of Sale was filed stating that the Mineral Interest was sold to Defendant Flare Royalties, L.P., another shell company owned by Russ and McCullough.  On January 30, 2006, without further effort to serve or notify the Erwin heirs, and with no objections or defenses raised by Mr. Harris, who ostensibly was representing their interests, Judge Stem signed the Decree Confirming Sale, Authorizing Payment of Fees and Costs, Placing Funds in the Registry of the Court and Authorizing Disbursement After Seven Years.  Judge Stem then awarded The Firm $5,253.00 in fees and costs.  Once again, Judge Stem awarded The Firm attorney fees for orchestrating a fraud.

67.    As noted above, Defendant Russ did not file the November 8, 2005 "Confirmation of Royalties" until August 23, 2006, *i.e.*, after Judge Stem had ratified the fraudulent transfer and after Flare Royalties began receiving royalty checks from Defendant Encana.

68.    On March 27, 2006, Velnon assigned its interest in the proceeds from the sale to Flare Royalties, L.P.

69.    Defendant Leor Energy and Defendant Encana conspired with Russ and McCullough to deprive the Erwin heirs of the royalties from the Mineral Interest.  Along with these Defendants, Burlington Resources owned an interest in the production unit into which the Mineral Interest was pooled.  Based on its review of public records, Burlington Resources knew that the Mineral Interest belonged to the Erwin heirs and, to its credit, it held their payments in escrow.  Defendant Encana, on the other hand, made payments to Russ and McCullough, via Flare Royalties, even though it knew the Mineral Interest belonged to the Erwin heirs.  Both Defendant Leor Energy and Defendant Encana were warned about the fraudulent scheme, and Defendant Leor Energy even dispatched a petroleum landman to investigate.  The landman met with Kenneth Lunsford, son of Mary M. Lunsford, and subsequently verified what Leor Energy

already knew, *i.e.*, that the Erwin heirs were the rightful owners. Despite the warnings, Defendant Encana continued to mail royalty checks to Defendant Flare Royalties.

70.    After learning about the fraud, various Erwin heirs filed a motion for new trial in the aforementioned *Velnon, L.L.C. vs. Unknown Heirs of Elizabeth Warren* on May 5, 2007. Most of the heirs in that action, including Plaintiff Roberts, were represented by Porter & Hedges, L.L.P., a Houston law firm. Other heirs, including Mrs. Lunsford, were represented by Wilshire, Scott, & Dyer, P.C., another Houston law firm. When asked about his participation in the fraud during a deposition, Defendant Leamon said he was only doing what Judge Stem told him to do. Defendant McCullough was present during the deposition and, according to witnesses, Defendant McCullough glared at Defendant Neamon, signaling him to quit talking. The Firm, Russ and McCullough, and the various shell companies quickly settled the claims.

71.    After the motion for new trial was filed, some of the Erwin heirs, including Plaintiff Erwin, asked one of the Houston firms about joining the case. Even though there was no apparent conflict with the interests of the other heirs, these heirs were told they would have to find their own attorneys elsewhere.

72.    When asked whether Russ and McCullough, et al. could be required to pay attorney fees, attorneys from the Houston firms either told their respective clients that attorney fees could not be awarded or that Judge Stem would not award them. The Houston firms did not disclose the availability of attorney fees, multiple damages, and punitive damages if the Erwin heirs were to file a separate lawsuit bringing claims of statutory theft, racketeering, and fraud. Likewise, the Houston firms did not disclose the option of bringing suit in federal court or a state court outside of Robertson County, nor did they disclose the possibility of seeking Judge Stem's disqualification or recusal. Moreover, the Houston firms failed to disclose that Russ and

McCullough would be allowed to retain ownership of the mineral interests belonging to the Erwin heirs who had not joined the motion for new trial, which amounted to nearly 20 percent of the overall Mineral Estate.

73.     On May 16, 2007, *The Bryan-College Station Eagle* ran a front-page story about the Erwin heirs' motion for new trial.  Early that morning, a Robertson County resident observed Russ, McCullough, and others removing boxes from the offices of The Firm.

74.     At the time settlement was reached in the summer of 2007, it was abundantly clear to Judge Stem and all the attorneys involved – including the Houston firms – that Russ and McCullough had perpetrated an enormous fraud, and it was equally clear that, under the terms of the proposed settlement agreement, they would be allowed to retain almost 20 percent of the mineral interests they had stolen.  No one, however, lifted a finger to protect the interests of the remaining victims of Russ and McCullough's fraud.  Judge Stem did not appoint another attorney ad litem, and he did not order the stolen royalties placed into the registry of the court. He simply allowed the ongoing theft to continue.  Plaintiff Erwin was among the heirs whose stolen interest was retained by Russ and McCullough after the settlement.  Further discovery will likely reveal that Defendant Encana is still mailing Plaintiff Erwin's royalty payments to Russ and McCullough (via Flare Royalties, L.P.).[2]

Ted Booher

75.     During August of 2006, Plaintiff Ted Booher contracted with Defendant Zeig

---

[2] Pursuant to Tex. Disciplinary R. Prof. Conduct 8.03(a), the undersigned filed a grievance against Defendant Russ and Defendant McCullough with the State Bar of Texas regarding the misconduct set forth in Paragraphs 31-36 of this Complaint. The undersigned included a copy of *United States ex. rel. Ty Clevenger v. Bryan F. Russ, et al.*, Case No. 6:08-cv-00259-WSS (W.D. Tex.) which also summarized the misconduct set forth in Paragraphs 38-54 of this Complaint. The Office of Chief Disciplinary Counsel dismissed the grievance on the grounds that it failed to state a violation of the disciplinary rules.  The Board of Disciplinary Appeals upheld the dismissal. This leads the undersigned to wonder how many felonies a lawyer must commit in order to merit an investigation, much less disciplinary action, by the State Bar of Texas.

Enterprises, Inc., to purchase 15.4 acres of real estate in Hearne, Texas for $400,000.00. Plaintiff Booher gave $10,000.00 to The Firm to be held in escrow. After the agreement was reached, but before closing, Plaintiff Booher learned about environmental hazards on the property, and he spent approximately $150,000.00 to clean up the property. The Small Business Administration had tentatively approved a loan for the purchase, but it could not be finalized until the property was decontaminated.

76.    With the permission of Defendant Zeig Enterprises, Inc., Plaintiff Booher began storing some of his equipment on the property in Hearne.

77.    At some point between the initial contract and closing, Defendant McCullough decided he wanted the real estate, and he colluded with Defendant James Zeig, president of Defendant Zeig Enterprises, to subvert the contract. On October 4, 2007, Defendant Zeig Enterprises sent a notice scheduling the closing for October 12, 2007, even though the decontamination had not yet been completed. On October 10, 2007, Defendant McCullough formed Defendant Hearne Business Park, LLC, and on or about October 15, 2007 Defendant Hearne Business Park, LLC purchased the property from Defendant Zeig Enterprises.

78.    Plaintiff Booher immediately filed suit in state court, and he filed a lis pendens with the Robertson County Clerk for the $150,000 in improvements he had made to the property. Shortly thereafter, the lis pendens was inexplicably set aside by Judge Stem. Plaintiff Booher filed a motion to disqualify Defendants Russ, McCullough, and The Firm since The Firm was serving as escrow for the transaction, but Judge Stem denied the motion to disqualify. Judge Stem denied Plaintiff's request for a temporary restraining order and ultimately granted summary judgment in favor of Defendants Zeig Enterprises and Hearne Business Park as well as one other defendant.

79.    In 2008, The Firm filed suit on behalf of Defendant Hearne Business Park against Plaintiff Booher, seeking $200,000.00 for the purported rent due because Plaintiff Booher's equipment had been stored on the property.  Defendant McCullough was seeking to coerce Plaintiff Booher to abandon his claims to the disputed property.  Judge Stem issued a $200,000 lien against the equipment, allegedly attributable to the rental value of the property, even though the purchase price of the property was only $400,000.00.  As a result, Plaintiff Booher has been unable to remove nearly $1 million worth of his equipment.  Defendant McCullough, acting through Judge Stem, is seeking to extort money from Plaintiff Booher by forcing him to pay outrageous rental charges or lose the use of his equipment.

Todd Reynolds

80.    On July 29, 2002, Plaintiff Todd Reynolds filed suit against Defendants Carlson, MWC, and Funk in Cause No. 28,283 in the 20th District Court of Milam County, Texas.  All the pleadings of that case are incorporated herein by reference.

81.    As set forth in the case cited above, Defendant Carlson, acting through Defendant MWC and in conjunction with Defendant Funk, clouded the title to Plaintiff Reynolds's property by filing a fraudulent Memorandum of Groundwater Lease with the Milam County Clerk.

82.    In 2002, Plaintiff Reynolds retained Defendant Russ and The Firm to represent him in the case cited above.  Defendant Russ listed the addresses for the defendants in the original petition, but he never made any attempt to serve them.  Defendant Russ repeatedly assured Mr. Reynolds that The Firm was attempting to serve the defendants when, in fact, The Firm was making no attempt to serve those defendants.  As the limitations deadline approached in 2005, Mr. Reynolds learned that Defendant Russ had been lying about his attempts to serve the defendants.  Mr. Reynolds then took matters into his own hands and attempted to serve the

defendants himself.

83.     Further discovery will likely reveal that Defendant Carlson, a con man and a convicted felon, conspired with Defendant Russ to sabotage Plaintiff Reynolds's case.

Phillip M. Krumnow, Jr.

84.     On June 17, 2002, Plaintiff Krumnow filed an application in the Falls County Court to probate the will of his father, Phillip Krumnow, Sr.  Defendants Pam Krumnow, Mendenhall, and Withhem retained The Firm and Defendants Russ and Hedrick to try to remove Plaintiff Krumnow as independent executor.  As set forth in *Krumnow v. Krumnow*, Cause No. 34,538, 82nd District Court of Falls County, these Defendants filed suit in district court – where Judge Stem presided – even though the district court had no jurisdiction.  All the pleadings and filings of that case, including its appeals to the Tenth Court of Appeals and the Texas Supreme Court, are incorporated herein by reference.

85.     In April of 2003, Judge Stem removed Plaintiff Krumnow as executor without notice or a hearing and appointed Defendant Boykin to replace him.  On May 25, 2004, Judge Stem appointed Defendant Harris as receiver to sell the property of the estate.  On June 17, 2005, Defendant Boykin and Defendant Harris conspired with Defendant Aiken, who represented DDC, to sell 824.57 acres of estate property at a below-market price.  Specifically, these defendants conspired to sell the Krumnow property to DDC for an amount lower than what had already been offered by another buyer.  On June 22, 2005, Defendant Harris filed a report with the court attempting to sell the property to DDC at the below-market price, and he mailed copies of the report and fraudulent contract to at least seven people on that day.

86.     Since 2002, Judge Stem has abused the power of his office egregiously, trying to force Plaintiff Krumnow to "back off" so he and his co-conspirators could parcel up the

Krumnow estate.  Further discovery will likely reveal that Defendants Boykin, Harris, The Firm, Russ, Hedrick, Aikens, and DDC – and possibly Judge Stem – attempted to profit from the estate and the trusts by selling estate and trust property to DDC for less than what it was worth.

Clifton Muzyka

87.    In 1996, Plaintiff Clifton Muzyka's mother died, leaving him a one-third undivided interest in approximately 500 acres.  Defendants Michael Muzyka and Catherine Motley, his brother and sister, each inherited an undivided one-third interest.  Some time in 2004, Defendants Russ and McCullough decided they wanted the mineral estate attached to the 500 acres, and they conspired with Defendants Muzyka and Motley to take Plaintiff Muzyka's interest in the estate. Specifically, Defendants Russ and McCullough recruited Defendants Muzyka and Motley to sue their brother.

88.    In early 2007, officials with the Robertson County Sheriff's Office, acting at the direction of Defendants Yezak and Davis, arrested Plaintiff Muzyka and charged him with 60 counts of animal cruelty.  These defendants alleged that Mr. Muzyka was starving his livestock. The Plaintiffs are aware of other instances in which the sheriff's department refused to take action when livestock were in far worse condition.  Further discovery will reveal that Defendants Yezak and Davis undertook this scheme, in conjunction with Defendants Russ, McCullough, Swick, and First Star Bank, in order to put financial pressure on Plaintiff Muzyka. The day *before* the sheriff's department arrested Plaintiff Muzyka and seized his livestock, Defendants Swick and First Star Bank initiated foreclosure proceedings on a loan secured by Plaintiff Muzyka's livestock.  Moreover, Defendants Russ and McCullough colluded with a local justice of the peace to set Mr. Muzyka's bond at $600,000 even though the maximum fine for the 60 *misdemeanor* counts was $240,000.  These defendants were attempting to force Plaintiff Muzyka

to relinquish his interest in the estate.

89.    After arresting Mr. Muzyka, the sheriff's department did not feed Mr. Muzyka's livestock for days.  The sheriff's department took 25 horses belonging to Mr. Muzyka and allegedly gave them away to a non-profit organization, but in fact Defendant Davis kept several mares for himself. Moreover, two witnesses observed Defendant Davis and Defendant Box loading 57 head of cattle into trailers, and those cattle remain unaccounted for to this day. In total, the sheriff's department cannot account for nearly 130 head of cattle that belonged to Mr. Muzyka.

90.    Plaintiff Muzyka was later convicted of three counts of animal cruelty.  He sought to appeal the conviction, but County Judge Jan Roe told him he would be jailed immediately if he did not waive his right to appeal. Under duress, Plaintiff Muzyka waived his right to appeal. He subsequently filed a motion for new trial after learning that Defendant Davis had withheld exculpatory videotape evidence and tampered with the videotape evidence that was presented at his trial.  Judge Roe denied the motion for new trial.

91.    In late June of 2007, Plaintiff Muzyka evicted a surveyor from the 500-acre estate.  The surveyor claimed that Plaintiff Muzyka threatened him with a sledgehammer, and the Robertson County Sheriff's Department charged Plaintiff Muzyka with aggravated assault with a deadly weapon. Defendants Russ and McCullough again conspired with a local justice of the peace, this time setting Plaintiff Muzyka's bond at $1 million, all for the purpose of pressuring Mr. Muzyka to relinquish his interest in the estate.

92.    The Muzyka estate was put into receivership, with none other than Defendant Leamon serving as receiver.  Plaintiff Muzyka and his wife, Plaintiff Fitzpatrick, sought a $25,000 loan to purchase the home in which they were living on the estate property, and they

were approved for the loan.  Ms. Fitzpatrick needed various documents from Mr. Leamon to

secure the loan, but Mr. Leamon refused to provide them.  As a result, Plaintiffs Muzyka and

Fitzpatrick could not get the loan, and Defendant Leamon sold the property to someone else.

Judge Stem then ordered Plaintiffs and Muzyka out of the house within 30 days.  Further

discovery will reveal that Defendant Leamon colluded with Defendants Muzyka, Motley, Russ,

McCullough, Swick, and First Star Bank to force Plaintiffs Muzyka and Fitzpatrick from the

home.

### Claims

*Civil Conspiracy*

93.     All the Defendants participated in a civil conspiracy and therefore are liable for

the acts of one another.  However, notwithstanding any other provision herein, Plaintiffs Roberts

and McKinney do not bring any claims of any kind against the Defendants with whom they have

already settled, *i.e.*, Defendants Russ, McCullough, The Firm, Leamon, L K & P, Oaks &

Diamonds, Deminimus, Velnon, Flare Royalties, L.P., and Flare Royalties, L.L.C., nor do they

seek any damages from them.

*Racketeering*

94.     All previous paragraphs are incorporated herein by reference.

95.     Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds,

Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione

Morgan, Michael T. Morgan, Leor Energy, Encana, Zeig Enterprises, James Zeig, Hearne

Business Park, Hedrick, Boykin, Harris, DDC, Aikens, Carlson, MWC, Funk, Yezak, Davis,

Box, Muzyka, Motley, Swick, and First Star Bank are liable for damages under 18 U.S.C. §1964

insofar as they participated in or colluded with a racketeering enterprise.  These defendants

repeatedly used the United States mail in furtherance of their schemes to defraud the Plaintiffs.

63.    Plaintiffs Erwin, Booher, Reynolds, Muzyka, Fitzpatrick and Krumnow bring racketeering claims against all Defendants.  Plaintiffs Roberts and McKinney bring racketeering claims against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Civil Rights Act*

64.    All previous paragraphs are incorporated herein by reference.

65.    Defendants Russ, McCullough and The Firm conspired with Judge Stem and various other officials to deny the Plaintiffs their rights to due process and equal protection guaranteed by the United States Constitution.  All the remaining Defendants conspired to participate in the schemes that led to the denial of these rights, therefore all Defendants are liable for damages under 42 U.S.C. §1983.

66.    Plaintiffs Erwin, Booher, Reynolds, Muzyka, Fitzpatrick and Krumnow bring claims under 42 U.S.C. §1983 against all Defendants.  Plaintiffs Roberts and McKinney bring claims under 42 U.S.C. §1983 against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Fraud*

67.    All previous paragraphs are incorporated herein by reference.

68.    All the Defendants are liable for fraud.

69.    Plaintiffs Erwin, Booher, Reynolds, Muzyka, Fitzpatrick and Krumnow bring claims for fraud against all Defendants.  Plaintiffs Roberts and McKinney bring fraud claims

against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Theft Liability Act*

70.    All previous paragraphs are incorporated herein by reference.

71.    Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana are liable for damages under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§134.001-134.005.

72.    Plaintiff Erwin brings claims of theft against all the Defendants identified in the foregoing paragraph of this Complaint.  Plaintiffs Roberts and McKinney bring claims of theft against Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

*Breach of Fiduciary Duty*

73.    All previous paragraphs are incorporated herein by reference.

74.    Defendant Harris and Defendant Leamon breached their fiduciary duties to the Erwin heirs, and Defendants Russ, McCullough, The Firm, Deminimus, Flare, Velnon, Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, and Leor Energy conspired with them to breach their fiduciary duties.  Defendants Harris and Boykin breached their fiduciary duties to the entities represented by Plaintiff Krumnow, and Defendants Hedrick, Russ, The Firm, DDC, and Aikens conspired with them to breach their fiduciary duties.  Defendant Russ and The Firm breached their fiduciary duties to Plaintiff Reynolds, and Defendants Carlson and MWC conspired with them to breach their fiduciary duties.  Defendants Leamon, Yezak, Davis, and Box breached their fiduciary duties to Plaintiffs Muzyka and Fitzpatrick, and Defendants Russ,

McCullough, The Firm, Muzyka, Motley, Swick, and First Star Bank conspired with them to breach their fiduciary duties.

75.    Plaintiffs Erwin, Reynolds, Muzyka, Fitzpatrick and Krumnow bring claims for breach of fiduciary duty against the defendants identified in the previous paragraph.  Plaintiffs Roberts and McKinney bring claims for breach of fiduciary duty against Defendants Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, and Leor Energy.

*Conversion*

76.    All previous paragraphs are incorporated herein by reference.

77.    Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana are liable for damages for conversion.

78.  Plaintiff Erwin brings claims for conversion against all the Defendants identified in Paragraph 77 of this Complaint.  Plaintiffs Roberts and McKinney bring claims of conversion against Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

*Tortious Interference*

79.    All previous paragraphs are incorporated herein by reference.

80.    Defendants McCullough, The Firm, and Hearne Business Park are liable to Plaintiff Booher for damages for tortuously interfering with his contract and his business relationship with Defendant Zeig Enterprises.

*Abuse of Process*

81.    All previous paragraphs are incorporated herein by reference.

82.    Defendants Russ, McCullough, The Firm, Muzyka, Motley, Yezak, Davis, Box, and Swick used criminal proceedings to try to coerce Plaintiff Muzyka to forego his real estate

interests, therefore they are liable to him for an abuse of process.

*Equitable Accounting*

79.    All previous paragraphs are incorporated herein by reference.

80.    Plaintiff Erwin demands an equitable accounting from Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.  Plaintiffs Roberts and McKinney demand an equitable accounting from Defendants Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

**<u>Prayer for Relief</u>**

Wherefore, the Plaintiffs request that this Court:

  a.  Award compensatory damages against the Defendants;

  b.  Award treble damages against the Defendants;

  c.  Award punitive damages against the Defendants;

  d.  Award costs of this action to the Plaintiffs;

  e.  Award reasonable attorney fees and costs to the Plaintiffs;

  f.  Order an equitable accounting; and

  e.  Award all other relief to which the Plaintiffs are entitled.


    Respectfully submitted,


    **<u>/s/ Ty Clevenger</u>**
    Ty Clevenger
    Texas Bar No. 24034380
    P.O. Box 4806
    Bryan, Texas 77805
    Phone: (979) 985-5289
    Fax:    (979) 530-9523

    ATTORNEY FOR PLAINTIFFS


<u>JURY TRIAL DEMANDED</u>