# Ty Clevenger
Attorney at Law

P.O. Box 4806
Bryan, Texas 77805

*telephone* (979) 985-5289
*facsimile* (979) 530-9523

October 26, 2009

Ms. Jacqueline Habersham, Senior Counsel
State Commission on Judicial Conduct
P.O. Box 12265
Austin, Texas 78711

VIA E-MAIL and REGULAR MAIL

    RE:    Judge Robert M. Stem, 82nd Judicial District

Dear Ms. Habersham:

    I wish to supplement my judicial complaint against Judge Robert M. Stem. As you know, my clients named Judge Stem as a non-party co-conspirator with several Robertson County attorneys in *Roy E. Erwin, et al. v. Bryan F. Russ, Jr., et al.*, Case No. 09-cv-1894 (S.D. Tex.), a federal racketeering lawsuit.

    On September 28, 2009, Judge Stem allowed some of his alleged co-conspirators to depose Alan Eppers, one of my clients, in my absence and under duress in the judge's chambers. Mr. Eppers is a client in the aforementioned federal case, and he had a child custody matter pending before Judge Stem. Judge Stem allowed Bryan F. Russ, Jr. to depose Mr. Eppers even though the federal case was irrelevant to the matters pending before Judge Stem. I have enclosed a signed statement from Mr. Eppers (I can produce an affidavit, if necessary), which explains the circumstances of this unlawful deposition.

    According to the enclosed October 15, 2009 affidavit from R.A. Deison, Judge Stem commonly takes matters into chambers for the apparent purpose of avoiding public scrutiny. I have also enclosed a copy of an affidavit from Jeff Duke, Mr. Eppers's attorney in the state court matter. It appears that the purpose of the unlawful deposition was to conjure up a bar grievance and a criminal charge against me. It further appears that Judge Stem has been trying to pressure Mr. Duke to file a grievance against me.

    There are several reasons why Judge Stem may wish to retaliate against me, not least of which is my role in the Commission's ongoing investigation. If Judge Stem is trying to deter me from prosecuting *Erwin v. Russ*, then he has engaged in a rather serious criminal offense. *See* 18 U.S.C. § 1503 (pertaining to obstruction of justice). Finally, Judge Stem is likely retaliating because I represented his mother against him in a rather sensitive matter concerning the return of some personal items that belonged to his late father. *See* June 10, 2009 letter from Ty Clevenger to Judge Robert Stem (enclosed); June 16, 2009 letter from Larry Holt to Ty Clevenger (enclosed); and July 15, 2009 letter from Minnell Stem to Judge Robert Stem (enclosed).

In light of Judge Stem's ongoing retaliation campaign, I ask the Commission to suspend Judge Stem from the bench immediately pending further investigation. In the alternative, I ask the Commission to order Judge Stem to recuse himself from all cases in which I am an attorney of record.

Respectfully,

Ty Clevenger

cc: The Hon. Robert M. Stem, Judge
      82nd District Court
   The Hon. Bill Turner, District Attorney
      Brazos County
   Mr. Larry Catlin
   Mr. Jeffrey F. Duke
   Mr. Alan Eppers

## Affidavit of Alan Eppers

My name is Alan Eppers, I am greater than 18 years of age, competent to testify, and I do testify under oath to the following facts based on personal knowledge, as witnessed by my signature below:

1. I have a child custody case pending against my ex-wife, Hollie Elliot, before Judge Robert M. Stem in Robertson County. Jeff Duke is my attorney in that case.

2. On June 1, 2009, my wife, Sherry Eppers, e-mailed Ty Clevenger after reading about a federal lawsuit he had filed regarding Judge Stem and other Robertson County officials. Sherry cc'd me on the e-mail.

3. Sherry told me that she and Ty subsequently spoke by telephone about my case, and they exchanged several e-mails. Sherry told me she spoke with Ty about participating in the federal lawsuit.

4. Ty called me a few months later and asked if I wanted to proceed as a party to the federal case. I told him I did, and we exchanged a few e-mails, including one where I viewed a draft of the portion of the lawsuit that pertained to me.

5. Ty filed the federal lawsuit on September 15, 2009 and sent an e-mail copy to me as well as most of the other plaintiffs. I did not read the lawsuit. I intended to join the federal lawsuit, but I assumed I was not yet a party since I had not yet signed a contract.

6. On September 28, 2009, I had a hearing in Robertson County before Judge Stem regarding visitation with my son. My ex-wife had denied me visitation with my son for more than a year, directly violating the divorce decree.

7. Before the hearing, my ex-wife's attorney, Bryan F. Russ, Jr., took me and Jeff into a jury room and confronted me about the federal lawsuit. Mr. Russ sarcastically demanded to know how my ex-wife was related to his wife (as alleged in the federal lawsuit).

8. Mr. Russ asked me if I was a party in the federal lawsuit, and I said I was not. I believed this to be true because I had not signed a contract, and I did not realize I could make a binding agreement without a written contract. Jeff had not been aware of the federal lawsuit because I did not send him a copy.

9. Mr. Russ said he wanted to ask me about the federal lawsuit, and I agreed. I felt I had no choice under the circumstances. Mr. Russ pointed out that the judge who was about to hear my case, i.e., Judge Stem, had been named as a co-conspirator in the federal lawsuit. I understood this to be a threat. I felt that I had to comply with his request in order to be allowed visitation with my son.

10. Following the meeting in the jury room, I was taken into the chambers of Judge Stem, where I was deposed by Mr Russ in front of a court reporter.

_____  10-22-09
Alan Eppers

On this _____ day of October, 2009, Alan Eppers appeared before me and testified under oath that the foregoing affidavit was true and correct, based on his own personal knowledge, as witnessed by my signature and seal below.

_____
NOTARY PUBLIC

IN THE 82nd DISTRICT COURT
FALLS COUNTY, TEXAS

PHILLIP M KRUMNOW, JR., et al.,

    Plaintiffs,

vs

PAM KRUMNOW, et al.,

    Defendants

Cause No 34,538

## AFFIDAVIT

I, R A DEISON, am greater than 18 years of age, competent to testify, and do testify under oath as follows, as witnessed by my signature below:

1. I am an attorney for the Plaintiffs in the case listed above.

2. I have been provided correspondence indicating that Bryan F Russ, Jr., counsel for the Defendants, was representing Judge Robert M Stem in a contested matter in 2003, i e, while this case was pending

3. Neither Mr Russ nor Judge Stem ever disclosed their attorney-client relationship Had I known, I would have requested Judge Stem's recusal on the grounds of a conflict of interest

4. During the tenure of this case, Judge Stem repeatedly called counsel into chambers to engage in off-the-record conversations of factual and legal matters I can only conclude that Judge Stem has done this to avoid public scrutiny. When I and my co-counsel objected to the practice of holding arguments in chambers and off the

record, Judge Stem started ruling against all our motions. I have been practicing law for over forty (40) years, and it is my observation and my professional opinion that Judge Stem routinely rules in favor of Mr. Russ's clients without regard to the law or the facts.

R.A. DEISON

## VERIFICATION

On October 15, 2009, R.A. DEISON personally appeared before me and stated under oath that the foregoing affidavit was true and correct, as witnessed by my seal and signature below



NOTARY PUBLIC, STATE OF TEXAS

-2-

## Affidavit of Jeffrey F. Duke

I, Jeffrey F. Duke, am greater than 18 years of age, competent to testify, and I do testify under oath as follows:

1. I am the attorney of record representing Alan Eppers in *Ex Parte Brandon James Eppers, a child*, Cause No. 09-06-18,386-CV, Robertson County District Court.
2. I first began to work on this case in June of 2009.
3. Mr. Eppers came to my office in the latter part of May 2009 and explained to me that he sought relief from the court because his ex-wife, Hollie Eppers, had denied him visitation with his son for more than a year, directly violating the divorce decree. During that period, he indicated that the court would not enforce the divorce decree's visitation requirement. He had not seen his son Brandon since April of 2008. He also informed me that he currently had an attorney representing him and that he was very concerned because it had been over a year since he had seen his son and asked if I could help him.
4. I agreed to help Mr. Eppers and became his attorney of record in June of 2009.
5. In that same month there was a hearing in Robertson County where we established temporary orders to get Mr. Eppers back into his son's life; at this hearing we set a status hearing for the last week of July to see how Mr. Eppers visitation was going.
6. At the Status Hearing in July, it was reported that every thing was going well with Brandon and his father, the court set a final hearing, to reestablish the full visitation rights granted in the divorce decree, for September 28, 2009
7. On September 28, 2009, Mr. Eppers and I drove to Franklin to attend what was supposed to be the final orders hearing before Judge Robert Stem.
8. Before the hearing, opposing counsel Bryan F. Russ, Jr., directed my client and me into a jury room to discuss pending modifications for child support, after our discussion and resolution to the child support matter. Much to my surprise Mr. Russ

confronted Mr. Eppers about his participation in *Roy E Erwin, et al v. Bryan F Russ, Jr., et al.* Case No. 4:09-cv-1894 (S.D. Tex.) ("Federal Case"). Before that time, I was not aware of Mr. Eppers involvement this Federal Case, and I do not represent Mr. Eppers in this Federal Case. Mr. Russ began asking Mr. Eppers about facts concerning Mr. Eppers's ex-wife and her relationship to to Mr. Russ's wife (as alleged in the Federal Case).

9. At this time I demanded to know what was going on and Mr. Russ pointed out that Mr. Eppers was named as a plaintiff in a federal lawsuit and that the judge who was about to hear his case, *i.e.*, Judge Stem, had been named as a co-conspirator in this Federal Case. Mr. Russ told Mr. Eppers he wanted him to give a statement on the record that he, *i.e.*, Mr. Eppers, had not authorized Ty Clevenger to file the Federal Case on his behalf.

10. We next were directed into Judge Stem's chambers for a hearing on *Ex Parte Brandon James Eppers*. Near the end of the hearing, Judge Stem directed Mr. Russ to prepare an order reestablishing Mr. Eppers's visitation rights. Following the hearing, Judge Stem convened what essentially was a deposition of Mr. Eppers regarding his involvement – or lack of involvement – in the Federal Case. As reflected in the transcript, the Federal Case had no relevance to *Ex Parte Brandon James Eppers*.

11. All of Mr. Russ's law partners, *i.e.*, James H McCullough, Molly Hedrick, and Bryan F. "Trey" Russ, III, were present in the room during the deposition, as was Larry Catlin, the attorney ad litem for Brandon Eppers. Though Mr. McCullough, Ms. Hedrick and Trey Russ are not involved in *Ex Parte Brandon James Eppers*, they are defendants in the Federal Case.

12. Bryan Russ asked Mr. Eppers a series of questions about the Federal Case, and Trey Russ whispered questions for Bryan Russ to ask Mr. Eppers

13. The day after the hearing, Judge Stem called to let me know he was sending me a transcript of the hearing. He encouraged me that it was my duty to file a bar grievance against Mr. Clevenger. The transcript was sent free of charge, and I am not sure who paid for

it. I have never before received a free transcript, much less an unsolicited free transcript.

14. Shortly thereafter, I received a phone call from Brian Schwartz, an investigator for the Brazos County District Attorney's Office. Mr. Schwartz informed me that he was investigating Mr. Clevenger, and he said he wanted permission to speak with Mr. Eppers. Mr. Schwartz later informed me that he was investigating Mr. Clevenger for barratry, and that the case had been referred from Robertson County.

15. Judge Stem called me several times between September 29, 2009 and October 22, 2009. He said that he wanted to make sure that I had received the forwarded transcript of the September 28, 2009 hearing, he also informed me that he had forwarded the transcript to the State Commission on Judicial Conduct in order to rebut the judicial complaint filed by Mr. Clevenger. He then again advised me that I had a duty to file a bar grievance against Mr. Clevenger.

16. I told Judge stem that my duty was to my client and that I would not do anything until I had a chance to discuss my clients involvement with Mr. Clevenger. He agreed, but also wanted to make sure my grievance against Mr. Clevenger was in the works.

17. I now have discussed my client's, Mr. Eppers, involvement in the above mentioned federal case and have came to understand why he was named a plaintiff. Mr. Eppers informed me that he had spoken with Mr. Clevenger and had intended on joining the Federal Case, he mistakenly thought the he had to have signed a contract with Mr. Clevenger before he could be named as a plaintiff. He told me he planned on telling me about this after our final hearing.

18. I have also spoken with Mr. Clevenger about this matter and I am satisfied with the explanation that he gave me regarding my clients involvement in the above mentioned Federal Case.

19. After learning the facts of the relationship between Mr. Eppers and Mr. Clevenger that transpired before the September 28, 2009 hearing, and given the facts alleged in the federal lawsuit, coupled with the subsequent conversations, submitting this statement makes me uncomfortable, because Bryan Russ still had not produced – and Judge Stem still had not signed – an order from the

September 28, 2009 hearing As of this date, Judge Stem still has not signed an order from the September 28, 2009 hearing. Although, Judge Stem has treated me with respect and kindness, I must wonder whether Judge Stem is waiting to sign an order until I file a bar grievance against Mr. Clevenger.
20. I can not in good faith file a bar grievance against Mr. Clevenger. I do not intend to file such a grievance.
21. I would also like to add, that this is the first case that I have ever had before Judge Stem, a client opposed to Bryan Russ, and I did not know Mr. Clevenger until recently.
22. I regret that I was put in the position to have to make this statement. However, I feel it is my moral and legal obligation.

As witnessed by my signature below, all the contents of this affidavit are true and correct based on my own personal knowledge.

Jeffrey F. Duke

On this 26TH day of October, 2009, Jeff Duke appeared before me and testified under oath that the foregoing affidavit was true and correct, based on his own personal knowledge, as witnessed by my signature and seal below.

SCOTT MATTHEW LEWIS
Notary Public, State of Texas
My Commission Expires
January 06, 2013

10/26/09

**Ty Clevenger**
Attorney at Law

P.O. Box 4806  
Bryan, Texas 77805

*telephone* (979) 985-5289  
*facsimile* (979) 530-9523

June 10, 2009

The Hon. Robert Stem  
P.O. Box 75  
Marlin, Texas

VIA FACSIMILE AND REGULAR MAIL  
(254) 883-1423

Dear Judge Stem:

    Yesterday I was retained by your mother to seek the return of some personal items that belonged to your father. Specifically, your mother seeks the return of your father's combat helmet and the gold watch that he brought back with him upon his return from World War II.

    Mrs. Stem informed me that she and your late father repeatedly asked for the return of these items. She provided me with a handwritten letter that she said your father sent you before his death, as well as a letter she wrote to you after his death, asking for the return of these items. She also provided me with a copy of your father's will, wherein he bequeathed all his belongings to your mother.

    If the personal items are not returned by Friday, June 19, 2009, I have been authorized to file a civil action seeking their return. Please contact my office to arrange the return of these items. Your mother does not wish to be contacted by you or by any member of your family directly, and any attempt to take the items to her house will be an act of trespass.

    Thank you for your attention to these matters.

Sincerely,

Ty Clevenger

# LARRY G. HOLT
Attorney at Law
1707 Broadmoor, Suite 103
Bryan, Texas 77802

(979) 846-2591                                                                                          (979) 731-8366 Fax

June 16, 2009

Mr. Ty Clevenger
Attorney at Law
P. O. Box 4806
Bryan, Texas 77805

RE:   Demand Letter to Robert Stem dated June 10, 2009

Dear Mr. Clevenger:

Judge Robert Stem retained me to respond to your demand letter of June 10, 2009. Judge Stem has delivered the requested items into my possession in the box originally containing these objects. This box also holds other objects not requested by Mrs. Stem. It is Judge Stem's desire to deliver these items in the same manner as they were given to him. These items were the subject of unconditional and completed gifts made by Mr. Stem to Judge Stem years before his death, motivated by deep fatherly affection and a mutual love of military history. Although it appears that Mrs. Stem has no viable legal claim to the items, Judge Stem has decided not to resist his mother's desire to have them if doing so brings her some comfort.

The watch face is slightly damaged. This damage occurred 20 years or so ago while Judge Stem's boys were playing with the watch without his permission or knowledge.

Judge Stem would appreciate your assistance in reminding his mother that his father made other gifts to him and his sons that should, in all fairness and equity, be carried out. In particular, it was Mr. Stem's desire that he and his son possess the following:

1    Model 1911 Commemorative WWI .45 automatic in a commemorative box
2    Model 1911 Commemoratove WWII .45 automatic chrome-plated in a commemorative box.
3    1892 or 1894 Winchester Saddle Ring 30-30 Carbine
4    9 mm Browning Automatic Pistol in leather case (Belgium made)
5    German 9 mm Luger

Mr. Ty Clevenger
Page 2
June 16, 2009

Judge Stem has not conditioned relinquishment of his father's gifts to him upon receipt of the listed items. Rather, he simply asks that his mother honor his father's wishes.

Please call me at your earliest convenience to arrange for the transfer of these articles. Unless informed otherwise, I assume you have authorization to execute a receipt for these items. Should you have any questions, I would be happy to discuss them with you.

Sincerely,

*Larry G. Holt*

LARRY G. HOLT
Attorney at Law

LGH/rr

cc   Judge Robert Stem

Robert Stem
CR 408
Lott, Texas 76656

Robert:

Thank you for the return of the helmet and watch which belonged to your Daddy. I had hoped this would be the end of our communication; however the letter that was sent with the helmet and watch raised questions that I feel need to be answered. To be absolutely clear, the items you requested in this letter do not belong to you as your daddy left everything to me. You have no claim on anything that is mine or was your Daddy's.

I am amazed at the tone of the letter because of the disrespect and indifference you showed us during the last years of his life. This was heartbreaking for us both, but especially for him. For years he cherished the relationship with you, but because of your negative behavior and cruel treatment of him, he died with a broken heart. He and I could not believe the terrible way you treated us and how you turned our grandchildren against us. He never accepted the statement you made to us that you and yours no longer wanted any type of family relationship with us.

This is the way you repaid your Daddy for all that he did for you. From getting you into Baylor Law School to making sure you had a job when you graduated. After all that he did for you, you never came to see him and would not have known he was in the hospital had your brother and sisters not contacted you. All of your professional successes you owe to him. It has been years since I have heard from you or your children. From now on, I want to keep it that way.

Please do not contact me again. If for some reason you need me, please call Sherilyn.

P.S.
Robert, I do not know what happened to you, but I do know you are not the son your Daddy and I raised.

Minnell Stem
7/6/09